USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/21/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

ALGERE JONES,

Defendant.

No. 11-cr-933-2 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

Now before the Court is Supervisee Algere Jones's motion to suppress the evidence seized from his car on March 20, 2017. (Doc. No. 100.) For the reasons that follow, Supervisee's motion is DENIED, and the Court finds that the government has proven specification one – which alleges that Supervisee "possess[ed] with intent to manufacture or deliver heroin" – by a preponderance of the evidence.

## I. BACKGROUND

On February 15, 2012, Supervisee pleaded guilty to the charge of conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(b)(1)(B). On December 2, 2014, the Court sentenced Supervisee to seven years of incarceration, to be followed by a life term of supervised release. (*See* Doc. No. 76.) Supervisee was released from custody and his supervision commenced on October 3, 2016. However, on April 4, 2017, the United States Probation Office for the Southern District of New York submitted a memorandum to the Court alleging that Supervisee had violated the conditions of his supervised release by (1) "possess[ing] with intent to manufacture or deliver heroin" and (2) "le[aving] the judicial district without the permission of the Court or the U.S. Probation

Office . . . ." On May 30, 2018 and June 11, 2018, the Court held a hearing on the two alleged violations at which the Court heard testimony from Pennsylvania State Trooper David C. Long II, Probation Officer Paula Dunn, and forensic scientist Gabriel Llinas. As relevant to this opinion, Trooper Long testified that, on March 20, 2017, he stopped Supervisee as he was driving southbound on Interstate 81 near Harrisburg, Pennsylvania. (Doc. No. 96 at 7:21–9:4.) Thereafter, Trooper Long conducted a search of Supervisee's vehicle and recovered a brown paper bag filled with 1,019 packets of what he believed to be heroin from underneath the front passenger's seat. (Doc. No. 96 at 17:15–20:11.) Mr. Llinas testified that he subsequently tested the substance recovered by Trooper Long and concluded that it did, in fact, contain heroin. (Doc. No. 104 at 97:14–17; 99:19–104:22.) The bag containing the heroin packets was admitted into evidence as Government Exhibit 7. (Doc. No. 96 at 18:9–22; 31:12–13.) Probation Officer Dunn testified that she never gave Supervisee permission to travel to Pennsylvania. (Doc. No. 104 at 77:16–18.) At the conclusion of the hearing, the Court determined that the government had proven specification two – that Supervisee left the judicial district without the permission of the Court or the United States Probation Office for the Southern District of New York – by a preponderance of the evidence, but reserved judgment on specification one pending Supervisee's motion to suppress Government Exhibit 7. On July 5, 2018, Supervisee filed the instant motion to suppress (Doc. No. 100), which was fully briefed on August 2, 2018 (*See* Doc Nos. 107, 108).

## II. DISCUSSION

### A. Motion to Suppress

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause . . . ." U.S. Const. amend. IV.

Traditionally, evidence obtained in violation of the Fourth Amendment has been suppressed pursuant to the exclusionary rule. *See Mapp v. Ohio*, 367 U.S. 643 (1961). However, the exclusionary rule is merely "a judicially created means of deterring illegal searches and seizures[,]" and the government's "use of evidence obtained in violation of the Fourth Amendment does not itself violate the Constitution." *Penn. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 363, 362 (1998). Accordingly, the Supreme Court has held that, because the exclusionary rule "is prudential rather than constitutionally mandated," it is "applicable only where its deterrence benefits outweigh its 'substantial social costs.'" *Id.* at 363 (quoting *United States v. Leon*, 468 U.S. 897, 907 (1984)). The Supreme Court has thus found the exclusionary rule to be inapplicable to, *inter alia*, grand jury proceedings, *see United States v. Calandra*, 414 U.S. 338 (1974), habeas proceedings, *see Stone v. Powell*, 428 U.S. 465 (1976), federal civil tax proceedings, *see United States v. Janus*, 428 U.S. 433 (1976), civil deportation proceedings, *see INS v. Lopez-Mendoza*, 468 U.S. 1032 (1984), and, most relevantly, state parole revocation proceedings, *see Scott*, 524 U.S. 357. In fact, the Supreme Court in *Scott* indicated a general unwillingness "to extend the operation of the exclusionary rule beyond the criminal trial context." *Scott*, 524 U.S. at 364; *see also id.* at 365 n.4 ("As discussed above, we have generally held the exclusionary rule to apply only in criminal trials. We have, moreover, significantly limited its application even in that context.").

Several courts in this circuit have extended the Supreme Court's holding in *Scott* – that the exclusionary rule is inapplicable to state parole revocation proceedings – to conclude that the exclusionary rule is similarly inapplicable to federal supervised release revocation proceedings. *See, e.g., United States v. Hightower*, 312 F. Supp. 3d 426, 428 (S.D.N.Y. 2018); *United States v. Spencer*, No. 06-cr-413 (DLI), 2016 WL 6781225, at *4 (E.D.N.Y. Nov. 15, 2016); *United States*

3

v. *Medrano*, No. 08-cr-60 (WHP), 2012 WL 3055758, at *2 (S.D.N.Y. July 20, 2012). These courts have noted and relied upon the Second Circuit's clear pronouncement that "the constitutional guarantees governing revocation of supervised release are identical to those applicable to revocation of parole or probation." *United States v. Jones*, 299 F.3d 103, 109 (2d Cir. 2002).

Notwithstanding this authority, Supervisee argues that the Supreme Court's holding in *Scott* should not be extended to federal supervised release revocation proceedings. (Doc. No. 103.) Instead, Supervisee suggests that the Second Circuit's holding in *United States v. Rea* – decided sixteen years before *Scott* and twenty years before *Jones* – is the more applicable precedent. (Doc. No. 103 (citing *United States v. Rea*, 678 F.2d 382, 388 (2d Cir. 1982) (holding that "evidence seized by a probation officer in an illegal warrantless search of a probationer's home is inadmissible at a subsequent probation revocation hearing.")).) Like the other courts in this circuit to have considered this issue, the Court concludes that *Rea* has been abrogated by *Scott*. *See, e.g., Spencer*, 2016 WL 6781225; *Medrano*, 2012 WL 3055758; *United States v. Betances*, No. 03-cr-134 (JSR), Doc. No. 206 (S.D.N.Y. Apr. 26, 2012). Contrary to the *Rea* Court's conclusion that "the deterrent effect to be gained by applying the exclusionary rule in probation revocation hearings . . . substantially outweighs the potential injury to the function of those proceedings[,]" *Rea*, 678 F.2d at 389, the Supreme Court in *Scott* determined that the exclusionary rule would "provide only minimal deterrence benefits" in the parole revocation context "because application of the rule in criminal trials already provides significant deterrence of unconstitutional searches[,]" *Scott*, 524 U.S. at 364. The Supreme Court further explained:

> The costs of excluding reliable, probative evidence are particularly high in the context of parole revocation proceedings[] [because] [p]arole is a "variation on imprisonment of convicted criminals," *Morrissey v. Brewer*, 408 U.S. 471, 477

4

(1972), in which the State accords a limited degree of freedom in return for the parolee's assurance that he will comply with the often strict terms and conditions of his release. In most cases, the State is willing to extend parole only because it is able to condition it upon compliance with certain requirements.

*Id.* at 365. The Court finds that this analysis is equally applicable to the federal supervised release context, and therefore concludes that the exclusionary rule is not applicable to supervised release revocation hearings.[1] Accordingly, IT IS HEREBY ORDERED THAT Supervisee's motion to suppress Government Exhibit 7 is DENIED.[2]

B. Specification One

Having denied Supervisee's motion to suppress, the Court now turns to the question of whether Supervisee violated the conditions of his supervised release by "possessing with intent to manufacture or deliver heroin[.]" The government has the burden of proving that Supervisee violated a condition of supervised release by a preponderance of the evidence. *See* 18 U.S.C. § 3583(e)(3). In light of the physical evidence seized from Supervisee's vehicle and the testimony of Trooper Long and Mr. Llinas outlined above, the Court concludes that the government has met its burden. Specifically, the Court finds that Supervisee possessed with intent to distribute the 1,019 packets of heroin recovered by Trooper Long, tested by Mr. Llinas, and admitted into evidence as Government Exhibit 7.

---

[1] Supervisee also suggests that the Second Circuit's summary order in *United States v. Lewis*, 712 F. App'x 83 (2d Cir. 2018) – in which the Second Circuit noted that it "ha[s] yet to decide whether the exclusionary rule applies to supervised release revocation proceedings[]" – somehow supports his contention that the exclusionary rule applies to supervised release revocation proceedings. (Doc. No. 108 at 2.) However, the mere fact that Second Circuit has not yet determined whether the exclusionary rule applies to supervised release revocation proceedings does not bar this Court from determining that it does not.

[2] Because the Court concludes that the exclusionary rule does not apply in the context of supervised release revocation hearings, it need not consider Supervisee's request to reopen the hearing to resolve alleged material issues of fact that might bear on the question of "whether or not there was probable cause . . . or reasonable suspicion for the search of the vehicle." (Doc. No. 108 at 6.)

5

## III. CONCLUSION

For the foregoing reasons, Supervisee's motion to suppress is DENIED. The Court finds that Supervisee possessed with intent to distribute heroin in violation of the terms of his supervised release. Accordingly, IT IS HEREBY ORDERED THAT the parties shall appear for sentencing on specifications one and two on Wednesday, October 17, 2018 at 10:30 a.m. IT IS FURTHER ORDERED THAT the parties shall file their sentencing submissions no later than October 10, 2018. The Clerk of Court is respectfully requested to terminate the motion pending at docket number 100.

SO ORDERED.

Dated: September 21, 2018
New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE